UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JENNIFER J. MILLER,

        Plaintiff,

        v.                                            Case No. 18-C-1721

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

Plaintiff Jennifer Miller, who is currently representing herself, filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits under Title II. Miller contends that the decision of the administrative law judge (ALJ) is flawed and requires remand for two reasons: (1) the ALJ improperly gave less weight to the opinions of Marya Liechti, Kristin Ovadal, and Kristin Gage and (2) the opinions of Dr. Steve Krawiec, Dr. Edmund Musholt, and Dr. Robert Starace do not support the ALJ's residual functional capacity (RFC) findings. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

Miller filed an application for a period of disability and disability insurance benefits on August 6, 2014. R. 13. She listed post traumatic stress disorder (PTSD), panic anxiety disorder, generalized anxiety disorder, social anxiety disorder, and depression as the conditions that limited her ability to work. R. 241. After her application was denied initially and on reconsideration, Miller requested a hearing before an ALJ. On July 10, 2017, ALJ Jeffry Gauthier conducted a

video hearing where Miller, who was represented by counsel, and a vocational expert (VE) testified. R. 35–100.

At the time of the hearing, Miller lived at home with her daughter, who was 10 years old. R. 47. She testified that her only source of income was survivor's benefits related to the death of her husband and that she receives food assistance and health insurance from the State. R. 48. Miller testified that she has a bachelor's degree in organizational administration and that she started, but did not finish, a master's program. R. 50–53. She previously worked at Randstad, Avon, and Associated Bank. R. 54–56.

Miller testified that PTSD, anxiety, and depression are the conditions that render her disabled and unable to work. R. 50–75. She stated that her PTSD was caused by her emotionally and physically abusive husband, R. 59, 61, and the sexual abuse she endured by the child of a family friend when she was four years old, R. 63–64. Miller testified that she has episodes of depression every few months that last three to four days. R. 73–74. She stated that she takes lorazepam and clonazepam, and while those medications do not help her function, they mitigate the anxiety and physical symptoms caused by her anxiety. R. 66–68. She also stated that she has participated in weekly counseling over the past few years. R. 75.

When asked about her fibromyalgia, Miller stated that it does not limit her ability to work. R. 80. Miller testified that her fibromyalgia prevents her from walking or standing for long periods of time but noted that standing is better than sitting. She testified that her fibromyalgia stems from her severe anxiety and that her symptoms cause her to get dizzy, limit her ability to walk, and create difficulty sleeping. *Id.* Miller stated she generally sleeps five hours a night but less if she has nightmares. She reported experiencing nightmares two times a week. R. 89–91. Miller stated that she takes amitriptyline to help with her sleep. R. 66.

As to her activities of daily living, Miller reported that she has her driver's license and drives to appointments, the grocery store, and her parents' house. R. 49. She testified that she can function so long as she limits her world by minimizing trips outside of the home or going to the store at times when it will not be busy. R. 81. Miller stated that she volunteered in her daughter's classroom on an as-needed basis, spends some time sewing and painting, and walks her daughter to school. R. 50, 82–83. She stated that she avoids contact with the public and avoids physical contact with men. R. 89.

In a fourteen-page decision dated October 4, 2017, the ALJ determined that Miller is not disabled. R. 13–26. The ALJ's decision followed the five-step sequential process for determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ found that Miller met the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity since May 13, 2018, the alleged onset date. R. 15. At step two, the ALJ concluded Miller has the following severe impairments: fibromyalgia, depression, anxiety, and PTSD. At step three, the ALJ found that Miller did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15–17.

The ALJ next assessed Miller's RFC and found that she can perform light work subject to the following limitations:

> She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She cannot work at unprotected heights or around moving mechanical parts. The claimant cannot operate a motor vehicle in a place of work. With regard to understanding, remembering and carrying out instructions, she can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). With regard to use of judgment in the workplace, she can make simple work-related decisions. The claimant is capable of occasional interaction with the public and coworkers and frequent interaction with supervisors. She can tolerate occasional changes in a routine work setting. In addition to normally scheduled breaks, she will be off task less than 10% of the time during an 8-hour workday.

3

R. 17. At step four, the ALJ concluded Miller would be unable to perform past relevant work but would be able to perform the following occupations: mail clerk, marker, and office helper. R. 24–25. Accordingly, the ALJ found that Miller is not disabled. R. 26. The Appeals Council denied Miller's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC*

4

*v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

**A. Consideration of documents that are not part of the administrative record**

As an initial matter, Miller requests that the court consider three sets of documents she attached to her opening brief but were not a part of the administrative record: (1) medical notes that span from 2010 through early 2014, (2) correspondence regarding her withdrawal from an MBA program, and (3) a September 22, 2017 Wisconsin Department of Vocational Rehabilitation (DVR) report stating her eligibility for DVR services. A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405.

> Evidence is "new" if it was "not in existence to the claimant at the time of the administrative proceeding." New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review."

*Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citations omitted). "[M]edical records 'post-dating the hearing' and that 'speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration' do not meet the standard for new and material evidence." *Id.*

Many of the medical records Miller requests that the court consider were generated before her alleged onset date and are therefore not material to the ALJ's decision. The only record generated after Miller's alleged onset date, dated February 14, 2014, was included in the administrative record before the ALJ. *Compare* Dkt. No. 12-1 at 47–50, *with* R. 488–91. The

5

correspondence regarding Miller's withdrawal from the MBA program is not new, since Miller had the letter at the time of the hearing. Miller has not established good cause for why this correspondence was not part of the administrative record. In any event, information regarding Miller's withdrawal from the MBA program was included in the administrative record. *See* R. 259 ("I was attempting to take classes at UW Oshkosh but was unable to handle the stress and dealing with others that my therapist wrote to the school that I am unable to handle academic pressure at this time.").

The September 22, 2017 DVR report advises that Miller is eligible for DVR services. An earlier DVR report, dated December 10, 2015, was part of the administrative record. R. 354–55. Although that report did not make an eligibility determination, the findings of the report regarding Miller's functional assessment were essentially the same. In addition, a "decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits" is not binding on the Social Security Administration. *See* 20 C.F.R. § 404.1504. As a result, the new DVR finding and report is not material. In short, the court will not consider the new evidence attached to Miller's brief and will not order that they be reviewed by the Commissioner of Social Security.

**B. Opinions of other medical sources**

Miller asserts that the ALJ improperly weighed the opinions of Marya Liechti, a counselor, Kristin Ovadal, a physician's assistant, and Kristin Gage, a social worker. The regulations separate medical evidence into two categories: "acceptable medical sources" and "other sources." Acceptable medical sources are limited to licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). "Other sources" include medical sources, such as nurse practitioners, social

6

workers, and therapists, as well as non-medical sources, such as educational personnel and relatives. § 404.1513(d). The distinction between "acceptable medical sources" and medical sources that are considered "other sources" is important because only "acceptable medical sources" can give medical opinions and be considered treating sources. 20 C.F.R. § 404.1527(a)(2); SSR 06-03p. Although Liechti, Ovadal, and Gage are not "acceptable medical sources," in deciding how much weight to give their opinions, the ALJ can apply the same kinds of factors used to evaluate acceptable medical sources, such as the length of the treatment relationship, consistency of the opinion with other evidence, and quality of explanation in support of the opinion. SSR 06-03p. SSR 06-03p explains that "the adjudicator generally should explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

In January 2016, Kristin Ovadal, a physician's assistant, provided a statement regarding Miller's ability to do work-related activities, that was countersigned by Dr. Kurt Bloomhuff in June 2017. Ovadal stated that Miller suffers from diffuse joint and muscle pain and indicated Miller had no ability to lift; could not stand, walk, or sit for more than one hour in an eight-hour day; would be absent more than four days per month; and could only work one to two hours a day, three days per week. R. 826–28. Ovadal noted that Miller's "inability to leave [the] house, grocery shop, etc. for [the] past year" supported her conclusions. R. 828.

The ALJ gave Ovadal's opinion less weight, finding that it is not well-supported by the objective medical evidence and is inconsistent with substantial other evidence in the record. R. 22. He first noted that Ovadal did not cite the impairments that form the basis for her opinion and

7

did not provide any explanation for the extreme limitations she imposed. He also concluded that her limitations are not supported by the treatment history and Miller's level of functioning. He explained that, although Miller was given medication to treat fibromyalgia, she stopped taking it only after a few months and refused to go back on it, which suggests the symptoms are not severe enough to be disabling. He also observed that Miller described a fairly active level of activities of daily living, including cooking, performing household chores, driving, taking kick boxing classes, and practicing Tai Chi. *Id.* An ALJ is entitled to discount a medical opinion that provides little evidence in support of its conclusion. 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3); *see also Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009) ("[A]n ALJ is required to determine the weight a nontreating physician's opinion deserves by examining how well [the physician] supported and explained his opinion."). The ALJ gave Ovadal's opinion less weight because she failed to cite supporting evidence and because it was inconsistent with other evidence in the record. The ALJ identified sufficient reasons to discount this opinion.

Kristin Gage, MSW, LCSW, submitted a letter in which she stated that she had been seeing Miller weekly since August 2014. She noted that Miller suffers from PTSD as the result of multiple traumas, including childhood sexual assault. Gage stated that Miller's current level of functioning was severely impaired by panic, which inhibits her ability to leave her house, complete activities of daily living, and interact socially with others, and has led to her seeking immediate medical treatment. She stated that Miller should be able to return to the work force one day, but the severity of her symptoms prevents her from being able to work for the next 5 to 10 years. R. 696–97. Gage also completed a mental residual functional capacity assessment, in which she indicated Miller would have an extreme limitation in understanding and remembering detailed instructions, maintaining regular attendance and being on time, maintaining attention and

8

concentration for extended time periods, completing a normal workday and workweek without interruption, interacting with the general public, getting along with coworkers and peers, and responding to work setting changes. She estimated Miller would be absent more than four days per month. R. 700–02.

The ALJ gave Gage's opinion less weight. He stated that Gage's opinion was inconsistent with substantial evidence in the record. In particular, the ALJ noted that medical evidence indicated there is no history of psychiatric hospitalizations and showed that Miller had a favorable response to treatment, such as medication and therapy. He also explained that the opinion is inconsistent with evidence indicating that Miller interacts appropriately with treatment providers and mental status examinations showing pleasant, cooperative, appropriate, sad and anxious mood, and intact insight and judgment. The ALJ also stated that the opinion is inconsistent with evidence showing that Miller felt she had made enough progress and her symptoms had improved enough that she no longer needed counseling in July 2015 and with evidence suggesting Miller has remained relatively stable since that time. R. 23. The ALJ gave logical reasons for giving Gage's opinion less weight.

Marya Liechti submitted a medical source statement of Miller's ability to do work-related activities, R. 889–95, and completed a mental impairment questionnaire, R. 817–20. In September 2016, Liechti indicated Miller had marked restriction in her activities of daily living; extreme difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace. R. 894. She also found that Miller had moderate to extreme limitations in her ability to make judgments on simple work-related decisions; mild to marked limitations in her ability to understand and remember complex instructions and to carry out complex instructions; and marked to extreme limitations in her ability to make judgments on

complex work-related decisions. R. 889. She noted that Miller's anxiety, depression, and PTSD supported her assessment. *Id.* Liechti concluded Miller could not work at this time. R. 895. In May 2017, Liechti reiterated that Miller had extreme restriction of activities of daily living and difficulties in maintaining social functioning as well as marked difficulties in maintaining concentration, persistence, or pace. R. 819. She noted that Miller had a history of being unable to function independently outside a highly supportive living arrangement and was unable to work at this time. R. 820.

Miller contends that the ALJ erred in giving Liechti's opinion little weight merely because Liechti had not provided any evidence to support the conclusion that Miller had extreme restrictions of activities of daily living and extreme difficulties maintaining social functioning. According to Miller, "New Wellness Associates has a policy that they will not release therapists' notes" and its policy should not be used against her to discredit her entire claim. Pl.'s Br. at 12, Dkt. No. 11. Yet at the administrative hearing, the ALJ asked about the absence of Liechti's treatment notes in the record, and Miller's attorney indicated that Miller contacted New Wellness and its staff reported that they sent everything that they had. R. 75–78. As a result, it was not improper for the ALJ to note that the administrative record did not contain treatment notes to substantiate Liechti's opinions.

In any event, the ALJ did not discredit Liechti's opinion solely based on the lack of supporting documentation as Miller contends. He also concluded Liechti's opinion is contrary to substantial evidence in the record. He explained that Miller is able to live and care for her daughter and herself independently. She cooks simple meals, performs household chores, drives a car, shops for necessities, and manages her finances independently. As for social functioning, the ALJ observed that, while Miller initially reported she did not like to leave her house and

avoided social contact, she reported she went shopping with her mother as needed and volunteered at her daughter's school two days a week. Miller also indicated that she spent time with her family and some friends. In June 2015, Miller reported that she was going out in public without becoming upset or anxious. R. 25. The ALJ further stated that Liechti's opinion is inconsistent with evidence indicating Miller has no history of psychiatric hospitalizations and treatment records showing a favorable response to treatment, including medication and therapy. R. 25–26. He also noted the opinion was inconsistent with evidence indicating that Miller interacts appropriately with treatment providers and mental status examinations showing pleasant, cooperative, appropriate, sad and anxious mood, and intact insight and judgment. Finally, the ALJ observed that the opinion is inconsistent with evidence showing Miller felt she had made enough progress and her symptoms had improved enough that she terminated counseling in July 2015 and with evidence showing Miller has remained relatively stable since that time. R. 26. The ALJ gave logical reasons for the weights he accorded the opinions of these medical sources. Accordingly, I find no error.

**C. RFC**

Miller also challenges the ALJ's assessment of her RFC. A claimant's RFC specifies the most that a claimant can do despite the physical or mental limitations imposed by her impairments. SSR 96-8p, 1996 WL 374184, at *2. In forming an RFC, the ALJ must review all of the relevant evidence in the record, including any information about the claimant's symptoms and any opinions from medical sources about what she can still do despite her impairments. *Id.* The ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess the RFC." *Id.* at *5. In this case, the ALJ found Miller has the RFC to perform light work with additional limitations:

11

>She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She cannot work at unprotected heights or around moving mechanical parts. The claimant cannot operate a motor vehicle in a place of work. With regard to understanding, remembering and carrying out instructions, she can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g. assembly line work). With regard to use of judgment in the workplace, she can make simple work-related decisions. The claimant is capable of occasional interaction with the public and coworkers and frequent interaction with supervisors. She can tolerate occasional changes in a routine work setting. In addition to normally scheduled breaks, she will be off task less than 10% of the time during an 8-hour workday.

R. 17. In making this finding, the ALJ relied on the objective medical evidence, other evidence in the record, and the opinion evidence.

Miller asserts that the ALJ improperly assessed the opinions of the consulting psychologists. After giving the opinions of the other medical sources little weight, it was not unreasonable for the ALJ to rely on these opinions, the only other sources that offered opinions related to Miller's functional capacity. Steve Krawiec, Ph.D., completed a consultative psychological examination in October 2014. He diagnosed Miller with panic disorder with features of generalized anxiety disorder and social anxiety as well as major depressive disorder. R. 611. He noted that Miller spoke of having a "great deal of difficulty" leaving the house because of anxiety, which he found would likely interfere with her getting herself out of the house and into a workplace and remaining there. He also observed that her mood disturbance could also interfere with her getting out of the house and performing efficiently in a workplace, limiting her ability to persist at tasks and maintain adequate pace. Though Dr. Krawiec did not think Miller would necessarily have trouble getting along with others, he thought she would be quite discomforted by the need to work among others. He advised against workplace changes and stresses because they could exacerbate her mental health or emotional difficulties. Dr. Krawiec opined that Miller had adequate cognitive capacity to understand and carry out simple job

12

instructions and that Miller did not display any difficulty with attention, concentration, or memory. *Id.* The ALJ gave Dr. Krawiec's opinion great weight.

Miller asserts that the RFC is inconsistent with Dr. Krawiec's findings because, had the ALJ relied on Dr. Krawiec's opinions, he would have found Miller disabled. But Dr. Krawiec did not say that Miller was unable to hold a job. He referenced her report "of having a great deal of difficulty even getting out of the house because of anxiety" and noted "that certainly would likely interfere with her getting herself out of the house and into a workplace and remaining there . . . ." *Id.* Essentially repeating himself, Dr. Krawiec also stated: "Her mood disturbance also could interfere with her getting herself out of the house and into a workplace and performing efficiently." *Id.* The question before the ALJ, of course, is not whether a claimant's mood disorder "could interfere" with her ability to work, but whether it actually would interfere and prevent her from working. Dr. Krawiec offered no opinion on that question, and we are again left wondering why the Agency bothers to obtain and pay for such unhelpful reports. *See Perez v. Berryhill*, No. 17-C-1693, 2019 WL 1293609, at *7 (E.D. Wis. Mar. 21, 2019) ("If the consultants SSA pays to provide the expert opinions needed to decide a claim fail to clearly state what a claimant can and cannot do, perhaps they should be asked to rewrite their reports.").

In any event, given the ALJ's findings with respect to Miller's relatively high level of daily activities, including "cooking, performing household chores, driving, taking kick boxing classes, and practicing Tai Chi," R. 22, and her mother's description of her interactions with others, R. 611, the ALJ's finding that her mood disorders were not of such severity as to preclude all work was entirely reasonable. And to the extent Dr. Krawiec did offer opinions, the ALJ included corresponding limitations in his RFC finding. The ALJ limited Miller to simple tasks, which accounts for Dr. Krawiec's finding that Miller could understand and carry out simple

instructions. The ALJ also accommodated for Dr. Krawiec's concerns regarding work changes and stresses, and limited Miller to only occasional changes in an otherwise routine work setting, engaging in only routine and repetitive tasks, and making simple decisions, and limited Miller to no production rate pace. To address Dr. Krawiec's concerns that Miller would experience increased symptoms when working around others, the ALJ also restricted Miller to only occasional interaction with coworkers and the public. In short, the RFC is consistent with Dr. Krawiec's opinions.

The ALJ also properly relied on the state agency reviewing physicians' opinions in forming the RFC. State agency "medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). State agency consultant Edmund Musholt, Ph.D., found that Miller was moderately limited in her ability to understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by others; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavior extremes; and respond appropriately to changes in the work setting. R. 107–08. He explained that anxiety limits Miller's pace and interferes with her ability to get herself out of the house and into a workplace and remain there. He noted that Miller becomes quite discomforted by the need to work amongst others, does not trust others, and has had a problem with relationships. R. 108.

14

State agency consultant Robert Starace, Ph.D., found that Miller was moderately limited in her ability to understand, remember, and carry out detailed instructions; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavior extremes; respond appropriately to changes in the work setting; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 121–22. Dr. Starace noted that Miller can understand, remember, and execute simple routine instructions/tasks; can sustain concentration, pace, and persistence; can socially interact adequately; and can adapt to changes in a limited contact setting. R. 123.

Miller argues that the ALJ erred in relying on the opinions of the state agency consultants because the consultants did not consider all of the medical evidence in the record. An ALJ does not commit reversible error merely because he relied on the opinions of state agency physicians who did not review all of the medical evidence in the record. Although an ALJ "should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion," *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), Miller has not explained how later medical evidence undermines the state agency consultants' opinions. In short, the ALJ did not err in relying on the opinions of the state agency consultants simply because additional medical evidence came into the record after they issued their opinions.

In addition, the ALJ did not rely entirely on the medical opinions in forming the RFC. He conducted an extensive review of the medical evidence. The ALJ noted that Miller was non-compliant with treatment and that she improved when she followed treatment. He observed that

15

mental status findings were usually nearly normal. The ALJ also noted that Miller's activities of daily living are nearly normal and fairly active. An ALJ may consider the claimant's daily activities as one of the factors in evaluating the intensity and persistence of pain. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). In this case, the ALJ used Miller's reported activities of daily living to assess the credibility of her statements concerning the intensity, persistence, and limiting effects of her symptoms. *See Pepper v. Colvin*, 712 F.3d 369, 369 (7th Cir. 2013) ("The ALJ concluded that, taken together, the amount of daily activities Pepper performed, the level of exertion necessary to engage in those types of activities, and the numerous notations in Pepper's medical records regarding her ability to engage in activities of daily living undermined Pepper's credibility when describing her subjective complaints of pain and disability."). The ALJ therefore did not err in relying on Miller's activities of daily living in formulating the RFC. In sum, the ALJ properly evaluated the medical evidence, including the opinions of the consulting psychologists, as well as the other evidence in the record. Substantial evidence therefore supports the ALJ's RFC finding.

## CONCLUSION

For these reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

Dated at Green Bay, Wisconsin this 6th day of January, 2020.

s/ William C. Griesbach  
William C. Griesbach, District Judge  
United States District Court